WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor under the last will and testament of PAUL J. CULHANE, deceased,

Plaintiff,

vs.

CHARLOTTE MARINE CULHANE, MARTIN A. CULHANE, FRANK O. CULHANE, WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Guardian of the property of PAUL J. CULHANE, JR., a minor, and WILMINGTON TRUST COMPANY, TRUSTEE under the last will and testament of PAUL J. CULHANE,

Defendants.

*New Castle, March 14, 1957.*

*James T. McKinstry,* of Richards, Layton & Finger, Wilmington, for the Executor, Wilmington Trust Co.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, for the Wilmington Trust Co., as Trustee under the Will of Paul J. Culhane and as guardian of the property of Paul J. Culhane, Jr.

*Andrew D. Christie,* Wilmington, for defendants, Charlotte Marine Culhane, Martin A. Culhane, and Frank O. Culhane.

SEITZ, Chancellor: Plaintiff-executor seeks instructions as to whether or not the defendant-widow of the testator is entitled to an intestate share of his estate.

In 1937, the deceased, Paul J. Culhane ("testator") married Helen Louise Prentiss. They had one child, Paul J. Culhane, Jr. Shortly after his birth on January 5, 1946, Helen Prentiss Culhane died intestate.

On June 20, 1946, the Orphans' Court appointed the Wilmington Trust Company as guardian of the property of the son, Paul J. Culhane, Jr.

On June 26, 1946, the testator entered into a trust agreement with the Wilmington Trust Company as trustee for the benefit of his son, Paul J. Culhane, Jr. He designated the trustee as the beneficiary

of several life insurance policies having a payment value in the aggregate of approximately $22,800, such proceeds constituting the entire trust fund. By a will of the same date he created a trust and named his son the sole beneficiary with contingent interests in favor of his two brothers.

On May 4, 1951, the testator married the defendant, Charlotte Marine Culhane ("wife" or "widow"), who was then 55 years of age. At the time she was a widow with two children, one married and one in high school. She had assets at that time worth approximately $15,000.

The testator died on September 6, 1956, without ever having altered the will which he executed shortly after his first wife's death and about five years before his remarriage. Needless to say, the second wife is not mentioned in the will. No children were born of this marriage and the testator made no substantial gifts to or for the benefit of his wife during their marriage. At the date of his death she had assets worth about $21,000.

The testator's gross estate passing under his will constituted real estate having a value of approximately $20,000 and personal property having a value of approximately $336,400.

The deceased and his wife lived together in apparent happiness from the date of their marriage in 1951 until the testator's death. The testator's son also lived with them.

As noted, the testator died in 1956 leaving a will which was executed before his remarriage and which did not contain any provision for the widow. Relying upon 12 *Del.C.* § 321, the widow claims the equivalent of an intestate share of the testator's estate. That statute reads as follows:

> "The descent or devolution of the estate, real or personal, of a married person, who, before his or her marriage, has made his or her last will and testament, and has not made provision for his or her spouse by will or otherwise, shall be subject to the following rights of the surviving husband or widow—

"(1) If the testator leaves a widow, she shall have the same part of his estate, real and personal, as she would have been entitled to if he had died intestate;

"(2) If the testatrix leaves a husband, he shall have the same part of her estate, real and personal, as he would have been entitled to if she had died intestate."

12 *Del.C.* § 323 (formerly a part of the same statute as § 321) reads as follows:

"Subsequent marriage shall not revoke the last will and testament of a person who, by such last will and testament, or otherwise, shall have made provision for his or her surviving spouse."

Since no independent argument is based upon the language of § 323 I need not discuss it.

Because the guardian for the minor child contended and the widow denied that the testator "otherwise" provided for his widow within the meaning of 12 *Del.C.* § 321, the executor filed this action seeking instructions. The contingent beneficiaries under the will, being brothers of the testator, filed an answer asking that the executor be instructed that the widow is entitled to an intestate share. All defendants join plaintiff's request for instructions.

The substance of the statute here involved dates from 1766, being found first in *Vol. 1, Chap.* 186, § 4, *Laws of Delaware.* Although it has been changed since that date, the language of that portion of the statute involved in this litigation is for all practical purposes the same.

As an aid to a proper application of § 321 it is pertinent to consider its purpose. Counsel as well as the Court are in agreement that its purpose is to protect the surviving spouse from unintentional disinheritance. This purpose has been recognized in construing the analogous after-born child statute. Compare *Woolford v. Woolford,* 31 *Del.Ch.* 579, 76 *A.2d* 5. In other words, the statute seeks to protect a spouse who is the victim of a probable oversight. Because we have had such a statute since before the War for Inde-

pendence and since its purpose is reasonably clear, and indeed conceded, it is not necessary for the Court to indulge in a discussion of the so-called common law rule applicable to such a situation. I therefore turn to a determination of the question as to whether the testator "otherwise" provided for his widow, within the meaning of the statute.

In discussing the statute I shall for convenience refer only to the present situation, *viz.,* a surviving wife.

"Provision" and "otherwise" are words of broad import. In the present statutory context it is clear that a provision made for the wife otherwise than by will may take many forms. However, common sense immediately suggests that not every benefit conferred by a husband upon a wife or wife-to-be would be a provision of the type contemplated by the statute. For example, all would agree that the gift of a fur coat would not be such a "provision". In my view the statute contemplates provisions from which it can reasonably be inferred that the testator's failure to change his will was intentional. Consequently, transactions relied upon as being "provisions" within the meaning of the statute must be analyzed in the light of surrounding circumstances. Certainly evidence of the means of the parties, family relationships, *inter vivos* conveyances and the like are pertinent. Compare the somewhat analogous situation *In re Faber's Estate,* 305 *N.Y.* 200, 111 *N.E.2d* 883. By considering the facts generally the Court may be better able to determine whether the testator deliberately or inadvertently failed to change his will. In saying this I nevertheless recognize that a difficult task is presented to the Court.

The attorney for the trustee and guardian points to the following three matters as showing that the testator made provision for his widow within the meaning of the "or otherwise" provision of the statute:

1. Changing his bank account into joint names.

2. On October 15, 1951, changing his $3,000.00 life insurance policy, provided without expense to Dupont employees, to make his wife the beneficiary.

3. On March 7, 1952, making his wife equal beneficiary with his son of a new contributory group life insurance policy of $21,000.00.

The parties have not discussed "burden of proof" and so I will not resolve the point because my conclusion would be the same either way. However, it should be noted that if the burden were to be placed upon the widow it would be the burden to prove a negative.

 The first action relied upon by the guardian is the change of the bank account into the joint names shortly before his death. The testator told the bank that the primary purpose of the creation of this joint account was to enable his wife to pay bills during his then illness, which I do not believe the testator felt would be fatal. The bank established the requested joint account, which had a balance of $2,073.16 at the time of the testator's death.

I do not believe the shifting of the account into joint names shortly before his death was a "transaction" within the meaning of the statute. I so conclude because of the purpose for the shift and the insignificant amount involved when compared with the size of the testator's estate. In saying this I should say that I agree with the attorney for the guardian that under the statute the adequacy of the "provision" made is not an issue. However, a transaction having small value when compared with the value of a testator's estate is a relevant fact entering into a determination as to whether a particular transaction is a "provision" of the type contemplated by the statute. I have adopted such an approach here.

█ I next consider whether the testator's action in changing his group life insurance policy was a provision for the widow within the meaning of the statute. The facts are that on October 15, 1951, the testator changed the beneficiary of a $3,000 group life insurance policy and made his wife the new beneficiary. This insurance was provided by the Dupont Company to its employees, but no deductions from pay or other charge was made for such insurance.

The change of beneficiary does not in my opinion have sufficient substance to warrant the inference that the testator was thereby making "provision" for his wife within the meaning of the statute.

I say this because this action was taken only a few months after his remarriage and involved a relatively small sum of money. Moreover, it was accomplished by the testator without any involved effort in contrast with the effort required to draw a new will covering his rather substantial estate.

■ Finally, I consider the testator's action in subscribing within less than a year after his remarriage to the group insurance policy. On March 7, 1952, the testator subscribed for this additional group life insurance from the Dupont Company in the amount of $21,000 and named his second wife and his son equal beneficiaries. This policy became available to employees of the Dupont Company for the first time during the spring of 1952.

While the testator was confronted with the necessity of making decisions as to whether to take advantage of the group life insurance plan and if so, as to the identity of the beneficiaries, I cannot conclude that his action warrants the inference that he thereby was intentionally determining not to make provision for his wife by will. I say this for the following reasons: The application for the policy did not particularly require the testator to consider a change in his will; the amount was relatively small viewed alone or in combination with other benefits; the policy was taken out in less than a year after remarriage and would not exclude the possibility that the testator might well have intended in time to make provision in his will for his second wife. After all, he was only 57 years old and was not ill at the time of the transactions cited. Nor is my conclusion altered by the fact that the testator may be assumed to have known that his widow would receive a legal share in his real estate. This is so because of the small value of the real estate.

The widow introduced evidence of conversations between her son and the testator concerning his understanding of the distribution of his estate. The guardian's counsel objected for reasons which I need not discuss. This Court permitted the evidence to be taken with the understanding that counsel's objection would be ruled upon in the opinion. However, I need not pass upon the objection since the evidence in my opinion is not helpful to the widow's case and because I have not relied upon it in reaching my decision.

I conclude that the evidence sufficiently demonstrates that the testator did not within the statutory requirement, make provision for his widow otherwise than by will and consequently the statute operates to give her the share of his personal property which she would have received had he died intestate.

The Court feels the Legislature might well consider whether the "otherwise" provision of the statute should be replaced by more explicit language defining the transactions contemplated by the statute. This would remove the uncertainty and consequent necessity for lawsuits in every such situation.

Present order on notice.