In the Matter of the Estate of FRANK E. GRIFFIN, Deceased.

Surrogate's Court, Kings County, April 14, 1936.

*Littleton Fox,* for the petitioner, Louise A. Griffin, as executrix.

*Joseph A. Kennedy,* special guardian for Florence Louise Griffin, infant adopted child of decedent.

WINGATE, S.   The present decedent, who was an executive of a well-known local corporation, died on May 24, 1935, leaving a will executed in September, 1916, which, with extreme brevity, left all his property to his wife and appointed her executrix.   His

estate concededly amounts to $140,000 in personalty and $6,250 in realty. In addition, there is insurance on his life in the sum of $55,000, which is payable to the widow as named beneficiary, and it was stated at the hearing that he had left a number of survivorship bank accounts, which passed to her on his death, the aggregate of the avails of which was not made to appear.

On April 5, 1932, the decedent and his wife legally adopted the respondent, Florence Louise Griffin, who is now an infant under the age of fourteen years. No change was made in the will, and it has been conceded that "there is no mention of, * * * and * * * is no provision made for the child in the will."

Section 26 of the Decedent Estate Law provides: "Whenever a testator shall have a child born after the making of a last will, either in his lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will."

It is the law of this State that a legally adopted child is within the contemplation of this enactment and that its rights are identical with those of a natural child of the testator. (*Bourne* v. *Dorney*, 184 App. Div. 476; affd., 227 N. Y. 641; *Matter of Marsh*, 143 Misc. 609, 613; *Matter of Hardenbergh*, SLATER, S., 144 id. 248, 250; *Matter of Horvath*, FOLEY, S., 155 id. 734, 737; *Matter of Guilmartin*, 156 id. 699, 700.)

The question presented for determination, therefore, is as to the rights under this statute of Florence Louise Griffin by reason of the fact that she was adopted subsequent to the date of the will and was concededly "neither provided for, nor in any way mentioned in such will."

Under the precise terms of the statute, she is entitled to the rights therein accorded, provided the other condition stated in the statute has not been met, namely, that she is "unprovided for by any settlement." It is, however, asserted that provision was thus made for her, and the facts in relation to such "provision" being conceded, their adequacy in this regard becomes a question of law.

The events upon which reliance is placed in this connection are reflected in the testimony of a member of the decedent's household which was adduced without objection. In January, 1933, the decedent said to his wife: " I would like you to go to the South Brooklyn Savings Bank and purchase some of those little silver banks that they have there and I'm going to give one to each of the children, and *I'm going to try to encourage them to save* like I have saved." By his reference to " children " the decedent meant this adopted daughter, his two nephews and the witness. The banks were accordingly procured, and on the evening of their arrival the decedent placed two fifty-cent pieces in each of the four. One was then given to the witness and one to each of the two nephews, and the fourth was marked with the daughter's name and placed on the decedent's dresser. From time to time he would take some change out of his pocket and say: " Here's the money that other fathers would be paying for cigarettes. I'll put it in the baby's bank." The decedent is also reported to have said, " Let's see who will have their bank filled first." The witness was the winner in this contest, her bank being filled by March 14, 1933, on which date her bank and that of the baby were taken to, and opened by, the savings bank. It then appeared that the " baby's " bank contained seven dollars and thirteen cents, which was deposited in an account in the name of the widow in trust for her. To this seven dollars and thirteen cents, the bank added fifty cents " because we opened it within a certain time." No further additions were made to the account except that about eight months after decedent's death, the bank credited to it an additional sum of fifty-two cents as interest.

The concrete issue, therefore, is whether the act of the decedent in placing small change to the amount of seven dollars and thirteen cents in the " baby's " bank constituted a provision for her by way of " settlement " within the contemplation of the statute.

As was noted by this court in its recent consideration of this statute in *Matter of Guilmartin* (156 Misc. 699, 701), its purpose is to guard against inadvertent failure on the part of a testator to make provision for those toward whom he owes a legal or moral duty. The observations of Chancellor KENT in *Brush* v. *Wilkins* (4 Johns. Ch. 506, 518, 519) are worthy of repetition in this connection: " The general reasoning on this subject, in favor of the revocation, is, that the testator having contracted new relations, such as those of husband or father, he must have intended a revocation of his prior will, because he must have meant to discharge the moral duties attached to those relations. * * * A stronger presumption of the testator's change of mind, arises from the

birth of subsequent children; for they cannot, like the wife, take care of themselves, by a suitable settlement, nor have they any fixed, unalienable provision, as the wife has, out of the real estate. They have, therefore, a very strong natural and moral claim to a competent support and provision, out of their father's property."

It is unquestionable that with certain limited and clearly defined exceptions, the law does not attempt to dictate to a testator the manner of disposition of his property or the recipients of his bounty. He is free to do as he will with his own. (*Matter of Watson*, 262 N. Y. 284, 293, 294; *Matter of Farkouh*, 134 Misc. 285, 286; *Matter of Shumway*, 138 id. 429, 433; *Matter of Kennedy*, 149 id. 188, 189; *Matter of Sidman*, 154 id. 675, 676.) There is, however, a strong factual inference that a man wishes to do that which is right and just, and the rule of law here under consideration is merely a crystallization of that inference. If he has expressly evinced an intention to the contrary, or if the reasonable inference flowing from his acts is to like effect, the presumption will be deemed rebutted, and the expressed or naturally deducible desire of the individual will be effectuated.

The determination in each instance, therefore, becomes one of whether the demonstrated statements or acts of the testator are sufficient to rebut the inference of a desire to make adequate provision for those to whom he owes a legal or moral obligation. Stated in a substantially equivalent manner, the question to be answered is, were the words and acts of the particular testator, subsequent to the incurring of the new obligations such as to demonstrate an active intention that the particular natural object of his bounty should not participate in the property passing under his will?

Many factors may frequently be pertinent in the solution of the question and it is inconceivable, where reliance is placed upon acts alone, that the factual demonstration in any two cases should ever be identical. If a financial benefit during life alone is involved, its size in relation to the resources of the decedent may be a consideration; the probable needs of the child are also potentially pertinent, as are the relations between the testator and the natural object of his bounty. These factors by no means constitute a complete enumeration of the matters which are of potentially probative value in attaining a conclusion as to whether the testator's acts upon which reliance is placed to demonstrate an affirmative intent to disregard his usual obligations are reasonably indicative of such a state of mind.

That the value of an extra-testamentary provision is, in and of itself, no safe criterion for determination is not only obvious from the nature of the inquiry but has been judicially recognized

(*Matter of Froeb*, 143 Misc. 660, 663; *Matter of Brant*, 121 id. 102, 104; *Matter of Tierney*, 148 id. 378, 384.) From time immemorial a gift of one dollar or the ritualistic shilling has, when made under appropriate circumstances, been deemed sufficient to foreclose the recipient from further participation in an estate. Conversely, circumstances are readily conceivable in which an *inter vivos* provision of a sum a million times as great would give rise to no logical inference of an intention on the part of the donor to exclude the recipient from a further share in his property. It is all a question of intention, with the statute providing that if the child is unprovided for by settlement or unprovided for or unmentioned in the will, the intention of the testator shall be deemed to be that he is entitled to take.

Whereas the determination of this question may under certain circumstances be fraught with doubt and perplexity, the declarations of the present decedent have removed any reasonable question as to the proper solution in this case.

The law recognizes two obligations of a father toward his child. The *first* is for support. The *second*, for care and training. While the former has given rise to more frequent litigation, the latter is no less fundamental. (*People* v. *Olmstead*, 27 Barb. 9, 33; *Matter of Forte*, 149 Misc. 327, 329; *Matter of Schriffrin*, 152 id. 33.) That these duties are distinct is obvious.

The statement of the decedent at the time of the inception of the bank transaction renders it entirely clear that his purpose was in furtherance of the latter obligation. He said: " I'm going to try to encourage them to save like I have saved." This statement renders it apparent that his only thought was one for inculcation of those habits of thrift which are an essential part of the training of any child no matter how bright his life's prospects may be. It was a part of the *res gestæ* and definitely negatives the imputation that the " cigarette " money which he from time to time set aside for the " baby " was intended by him to be a " settlement " for its future material, as distinguished from its moral, welfare.

This is the only intention which is reasonably attributable to him in connection with the entire transaction, and it may not be metamorphosed into a design to make a financial provision for his child. Any other interpretation would transform the beneficent purpose of the statute into a hollow mockery and furnish ground for the oft-repeated lay assertion that laws are made for avoidance rather than for sensible enforcement.

In the opinion of the court the present situation is one in which the statute is clearly applicable, and according to its terms Florence Louise Griffin is entitled to " succeed to the same portion of " her

" parent's * * * real and personal estate, as would have descended or been distributed to " her " if such parent had died intestate."

A final question remains for determination respecting the asserted right of the widow to dower in the real estate. The sum involved is comparatively small, but this cannot, of course, alter the principle of determination. (Cf. *Matter of Kupfershmid,* 158 Misc. 493.)

Under the statute, as hereinbefore noted, the daughter is to take the same rights in the estate to which she would have been entitled had the decedent died intestate. Whereas, as an original matter, it might be argued that the manner of her taking is not the same as if intestacy had actually occurred, since the statute expressly provides that she " shall be entitled to *recover* the same portion *from the devisees and legatees,* in proportion to and out of the parts devised and bequeathed to them by such will," and that in consequence the entire property would pass to the devisee with a recovery then to be made by the child from the latter, yet the uniform tenor of decisions is to the effect that she takes " as heir at law by descent." (*Yung* v. *Blake,* 163 App. Div. 501, 503; *Matter of Murphy,* 144 N. Y. 557, 561, 562; *Smith* v. *Robertson,* 89 id. 555, 559.) The result of this mode of operation would, therefore, be that the will was valid only to the extent of the part not passing under the Statute of Distribution and the effect, for practical purposes, would be the same in the present case as if the testator had devised and bequeathed to the widow an undivided one-third of his estate only. If the matter be viewed in this manner, it would follow that the widow would be entitled to dower, since the parties intermarried and the property was acquired prior to September 1, 1930. (*Matter of Bachmann,* 151 Misc. 761, 763, 764.)

The same result is attainable by application of the principle that existing laws are deemed incorporated into wills as into every other document. (*McCracken* v. *Hayward,* 2 How. [U. S.] 608, 613; *Edwards* v. *Kearzey,* 96 U. S. 595, 601; *People ex rel. City of New York* v. *Nixon,* 229 N. Y. 356, 361; *Matter of Cohen,* 150 Misc. 17, 22; affd., 246 App. Div. 539.) So considered, the testamentary gift of the entire estate would have been subject to an implied condition that the testator did not have a subsequent child for whom he failed to make settlement. In the event of the occurrence of the divesting event, he gave the widow one-third and no more.

Viewed in either of these aspects, there would be nothing in the gift to the widow which would be incompatible with her right of dower, wherefore she should be held entitled to receive it.

(*Konvalinka* v. *Schlegel,* 104 N. Y. 125, 129; *Matter of Gorden,* 172 id. 25, 28; *Matter of Fairchild,* 138 Misc. 363, 365; *Matter of Helliesen,* 149 id. 184, 186.) This result appears to be in accordance with that attained in *Yung* v. *Blake* (*supra*). The court has not overlooked the contrary determination in *Matter of Hume* (139 Misc. 327).

It follows that the daughter is entitled to two-thirds of testator's distributable estate after deduction of the widow's dower, and that the latter will receive the remainder.

Enter decree on notice.