In the Matter of the Estate of MAX FABER, Deceased. SANDRA D. FABER, by JOSEPH SCIRTO, Her Special Guardian, Appellant; HELEN FABER et al., as Executrices of MAX FABER, Deceased, et al., Respondents.

Argued January 12, 1953; decided April 9, 1953.

*Joseph F. Scirto,* special guardian for Sandra D. Faber, an infant, appellant. I. The simple act of changing beneficiaries of certain insurance policies, while still reserving the privilege of other changes either in beneficiary or mode of payment, does not constitute a " settlement " within the meaning of section 26 of the Decedent Estate Law. (*Matter of Stern,* 189 Misc. 639; *Sorrell* v. *Sorrell,* 193 N. C. 439; *Williamson* v. *Williamson,* 232 N. C. 54; *Meares* v. *Meares,* 26 N. C. 192.) II. In determining the issue here presented, only a provision for a child made in a written agreement contemporaneous with or prior in date to the will may be considered. (*Matter of Stern,* 189 Misc. 639; *Matter of Robinson,* 188 Misc. 720; *Matter of Del Genovese,* 169 App. Div. 140.) III. The Court of Appeals is not bound to follow the decisions that executrices contend support their claim, especially since they are not sustained by appellate authority, and further because they may be distinguished from the pending case. (*Matter of Brant,* 121 Misc. 102; *Matter of Froeb,* 143 Misc. 660; *Matter of Backer,* 148 Misc. 318; *Matter of Snopek,* 149 Misc. 665; *Matter of Kelly,* 182 Misc. 481.)

*Ellsworth Storrs* for Helen Faber and another, executrices, respondents, and *Daniel P. Falsioni,* special guardian for Adell Faber, an infant, respondent. Testator, by changing life insurance policies in force prior to the birth of Sandra to make her equal beneficiary thereon with her sister, made a settlement upon her recognized by section 26 of the Decedent Estate Law, so that she cannot elect to take against the will. (*McLean* v. *McLean,* 207 N. Y. 365; *Matter of Brant,* 121 Misc. 102; *Matter of Stone,* 200 Misc. 639; *Matter of Kelly,* 182 Misc. 481; *Matter of Kraston,* 58 N. Y. S. 2d 364; *Matter of Froeb,* 143 Misc. 660; *Matter of Backer,* 148 Misc. 318; *Matter of Hagendorn,* 41 N. Y. S. 2d 491.)

FULD, J. In the summer of 1946, Max Faber executed his last will and testament. At that time, he had but one child, Adell, a girl of about two. He died four years later, but, in the interval, another daughter, Sandra, was born. The will made provision for his wife and Adell, but not for the after-born child. However, about a month after her birth, the father took out a $5,000 policy of insurance for her benefit. A little later, he altered that policy to include Adell as co-beneficiary and changed $24,000 worth of other insurance — taken out over the years — likewise to designate both Sandra and Adell as co-beneficiaries.

When some months later Faber died, he left a net estate, after taxes, of about $54,000. By his will, he directed that it be held in trust during the lives of his wife and father, and that the trustees pay from income $10 a week to his father and $50 a week to his wife. He further provided that, if the trust income was insufficient to pay the wife that amount, the difference was to be made up out of principal, and that, if both income and principal payments proved inadequate for her "comfort and support," the trustees were to invade the corpus and pay her such additional sums as they deemed necessary. Upon termination of the trust, the balance of the estate was to be turned over to Adell.

Since the will neither mentioned nor provided for any afterborn child, the question arose whether, under section 26 of the Decedent Estate Law, Sandra was entitled to share in her father's estate, despite his will. That section recites that "Whenever a testator shall have a child born after the making

of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, *unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will,* every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will.'' (Emphasis supplied.) Both courts below have found that the provision for the after-born child, Sandra, by way of insurance constituted the requisite statutory '' settlement '' and barred her from participating in the estate. That finding is conclusive, unless we can say, as a matter of law, that a '' settlement '' requires some element here lacking. Neither the purpose of the statute nor its long-continued construction by the courts, permits such a decision.

The statute's earliest forerunner, practically word for word identical, was enacted in 1830 (Rev. Stat. of N. Y. [1830], pt. II, ch. VI, tit. I, § 49).[1] Its purpose was not '' to compel, regulate or control testamentary provision * * * by a parent for children '' (*McLean* v. *McLean,* 207 N. Y. 365, 371), but merely '' to guard against inadvertent or unintentional disinheritance '' (*Wormser* v. *Croce,* 120 App. Div. 287, 289) or, as the Statutory Revisers who drafted the provision explained, to make '' just provision * * * for a probable oversight '' where a testator has failed to provide for an after-born child. (Revisers' Note to proposed § 56 [later enacted as § 49], Rev. Stat. of N. Y., pt. II, ch. VI, tit. I, Revisers' Reports [1828], vol. 3.)

Since there is here nothing to suggest any specific prerequisite to, or any recondite meaning for, a '' settlement,'' we take as our guide the statute's purpose and design. The legislature attempted neither to entail estates in favor of after-born children nor to shield them from intentional disinheritance or unequal treatment. Its sole objective was to assure that if, *through oversight,* they were neglected in the will, other provision would be made for them. The legislature did not choose,

---

1. Initially, in 1830, the statute covered only a father's will; its coverage was broadened in 1869 to include the will of either parent (L. 1869, ch. 22).

and has not chosen, to specify the character or content of the essential "settlement" or to prescribe any definite yardstick for determining whether one has been effected. Accordingly, it is the fact situation in each case that must be considered and appraised, with a view to determining whether the parent intended a given out-of-will provision to serve the purpose of a "settlement" under section 26. The touchstone is intent, and no court can decree in advance the essential factors upon which a particular testator's intention may be predicated. Such factors as the character and size of the provision for the afterborn child, the circumstances under which it was made, the value of the entire estate and, as here, the nature of the provision made for another child, may undoubtedly serve as signposts to the testator's intention.

While this court has not hitherto considered the question, surrogate's courts throughout the state have, with rare exception, agreed that the matter of intent is the all-important issue, that "any act of the testator indicating an intention to make future provision" for the child "would fulfill the requirement" for a settlement. (*Matter of Brant,* 121 Misc. 102, 104; see, also, *Matter of Schwabacher,* 202 Misc. 15; *Matter of Stone,* 200 Misc. 639; *Matter of Kraston,* 58 N. Y. S. 2d 364, 366; *Matter of Hartman,* 55 N. Y. S. 2d 791; *Matter of Kreutz,* 49 N. Y. S. 2d 402, 404; *Matter of Kelly,* 182 Misc. 481, 486; *Matter of Hagendorn,* 41 N. Y. S. 2d 491; *Matter of Curry,* 21 N. Y. S. 2d 544; *Matter of Griffin,* 159 Misc. 12, 15–16; *Matter of Backer,* 148 Misc. 318, 320; *Matter of Froeb,* 143 Misc. 660.) If that be so, the "settlement" may be effected at any time; it need not be made before or contemporaneously with the execution of the will. (See *Matter of Stone, supra,* 200 Misc. 639; *Matter of Kraston, supra,* 58 N. Y. S. 2d 364, 365; *Matter of Hartman, supra,* 55 N. Y. S. 2d 791; *Matter of Kreutz, supra,* 49 N. Y. S. 2d 402, 404; *Matter of Kelly, supra,* 182 Misc. 481, 486; *Matter of Hagendorn, supra,* 41 N. Y. S. 2d 491; *Matter of Curry, supra,* 21 N. Y. S. 2d 544; *Matter of Backer, supra,* 148 Misc. 318; *Matter of Froeb, supra,* 143 Misc. 660; *Matter of Brant, supra,* 121 Misc. 102; but see, contra, *Matter of Stern,* 189 Misc. 639, 650 *et seq.*; *Matter of Robinson,* 188 Misc. 720; *Matter of*

*Kirk,* 191 Misc. 473.)[2]   It need not assume any particular form; t may, for example, be a gift in trust of a savings account (see *Matter of Hartman, supra,* 55 N. Y. S. 2d 791; *Matter of Curry, supra,* 21 N. Y. S. 2d 544; but cf. *Matter of Griffin, supra,* 159 Misc. 12) or the payment, as in this case, of proceeds from policies of life insurance.   (See *Matter of Schwabacher, supra,* 202 Misc. 15; *Matter of Stone, supra,* 200 Misc. 639; *Matter of Kraston, supra,* 58 N. Y. S. 2d 364; *Matter of Kreutz, supra,* 49 N. Y. S. 2d 402; *Matter of Kelly, supra,* 182 Misc. 481; *Matter of Hagendorn, supra,* 41 N. Y. S. 2d 491; *Matter of Backer, supra,* 148 Misc. 318; *Matter of Froeb, supra,* 143 Misc. 660; *Matter of Brant, supra,* 121 Misc. 102.)   It need not be an irre-vocable interest, forever placed beyond the control or dominion of the testator (see *Matter of Stone, supra,* 200 Misc. 639; *Matter of Kraston, supra,* 58 N. Y. S. 2d 364, 365; *Matter of Kelly, supra,* 182 Misc. 481, 486; *Matter of Hagendorn, supra,* 41 N. Y. S. 2d 491; *Matter of Backer, supra,* 148 Misc. 318; *Matter of Froeb, supra,* 143 Misc. 660; *Matter of Brant, supra,* 121 Misc. 102) ; and it may, indeed, be contingent, payable upon the child's surviving some one other than the testator.   (See *Matter of Schwabacher, supra,* 202 Misc. 15, 16; *Matter of Kirk, supra,* 191 Misc. 473, 475; *Matter of Kreutz, supra,* 49 N. Y. S. 2d 402.)

That the decisive criterion under the statute before us is intent, rather than form or method, is further confirmed by consideration of a related statute.   Enacted in 1830 — along with the earliest version of section 26 — was the prede-

2. It was not until 1945 — when *Matter of Stern* (*supra,* 189 Misc. 639) was decided — 115 years after the statute was first enacted, that any surrogate even suggested that the "settlement" denoted or encompassed only a provision made by the testator before or contemporaneously with the execution of the will.   Indeed, the very surrogate, who in 1945 so construed it, had, some 12 years earlier, held otherwise (see *Matter of Backer, supra,* 148 Misc. 318), and, in the years since 1945, only one other judge has chosen to follow the *Stern* decision.   (See *Matter of Kirk, supra,* 191 Misc. 473; *Matter of Robinson, supra,* 188 Misc. 720.)   Even the Appellate Division justices who dissented below expressly declared that they "cannot adopt" the view expressed in *Stern.* "Aside from being highly legalistic," they wrote, "this narrow interpretation renders the statute practically meaningless."   (280 App. Div. 394, 398; see, also, Schwartzberg and Lieb, Succession, 1952 Survey of New York Law, 27 N. Y. U. L. Rev. 1127, 1136.)

cessor of present section 35 of the Decedent Estate Law, pre scribing that, absent provision for "some settlement," a wil was to be deemed revoked by a subsequent marriage and the birtl of issue (Rev. Stat. of N. Y. [1830], pt. II, ch. VI, tit. I, § 43) Rights under that statute, just as under section 26, depended o1 the lack of a "settlement". While both sections have been sub jected to periodic legislative review (see, e.g., 1931 Report of th( Commission to Investigate Defects in the Laws of Estates [N. Y Legis. Doc., 1931, No. 69], pp. 76–77; 1932 Report [N. Y. Legis Doc., 1933, No. 55], pp. 6, 20), the legislature in 1932 amende( section 35, but not section 26, by replacing the words, " *som*( settlement " — in section 35 — with the term, " *an ante nuptia* agreement." (L. 1932, ch. 459; see, also, L. 1919, ch. 293; L 1931, ch. 562.) Such variant legislative treatment of thes( analogous provisions is significant and enlightening; while thu; insisting upon a specific type of settlement under section 35 the legislature took no steps to require any particular type o " settlement " under section 26. And, beyond that, it suggest: the legislature's approval of the long-continued judicial con struction given to the phrase in section 26. (Cf. *Rucker* v *Board of Educ. of City of N. Y.*, 284 N. Y. 346, 348–349; *Matte: of Scheftel*, 275 N. Y. 135, 141; *Matter of Trosk* v. *Cohen*, 26: N. Y. 430, 435–436.)

Having in mind the facts of the case before us, Faber's desig nation of Sandra as co-beneficiary of insurance policies having ; face value of $29,000 leaves little doubt — or; at least, the court: below were justified in so finding — that he intended her shar( of the insurance proceeds to constitute her sole receipt a his death. By doing what he did, Faber effected a more or les; equal division of his insurance estate between his daughter: and by will provided that the remainder of his assets be held i1 trust for his wife and father. While he did direct that, upo1 their death, the other daughter, Adell, was to receive whateve; remained of the trust corpus, there is no great likelihood – particularly in view of the trustees' almost unlimited power t( invade principal for the wife's " comfort and support " — tha any sizable share of the estate will eventually accrue to Adell.

Indeed, if the surrogate had concluded that Sandra had a righ to her intestate share, the corpus of the trust would have bee1

ut from $54,000 to about $36,000. Such a diminution of the rust would have seriously frustrated the testator's intent that tis widow, very obviously the primary object of his affections, ie adequately cared for. Moreover, to rule that Sandra, despite ter insurance proceeds, was left "unprovided for by any ettlement," would result in her receiving one third of the state, about $18,000, in addition to the insurance of $14,500, t total of some $33,000, an amount that might well exceed Adell's highly speculative share. It is hard to believe that any 'ather could have intended a distribution so disproportionately 'avorable to the younger child. Yet such a result — a distribuion patently unfair to an older child or to a spouse mentioned n the will — might frequently ensue, were we to hold, as a natter of law, that a provision such as that here involved 'ell short of the "settlement" contemplated by the statute. The placid history of this ancient enactment, its long-accepted construction without serious challenge or legislative modifiation, affords impressive evidence that its objective may best be attained without rigid formalistic requirements. At any rate, the legislature has not seen fit to impose any, and we merely follow its mandate in affirming the challenged determination.

The order of the Appellate Division should be affirmed, with costs to all parties appearing herein and filing separate briefs, payable out of the estate.

Desmond, J. (dissenting). I dissent because the decision about to be announced fails to give complete, affirmative meaning to important statutory language, and, insofar as it attempts definition thereof, arrives at a meaning opposed to that dictated by history and legislative purpose.

Section 26 of the Decedent Estate Law, our "pretermission" statute as to after-born children, has not, until now, been up for construction in this court. The statutory language to which a precise meaning should here and now be given is this: "leaving such child, so after-born, unprovided for by any settlement". That plainly says that, to escape the result otherwise dictated — the partial revocation of the will and the "letting in" of the after-born child — there must not only be provision for that child, but such provision must be by way of a "settlement". Numerous lower court decisions cited in the majority

opinion say that the " settlement " need not be in the form of a writing signed by the parent, need not be in any particular form, need not be absolute, need not be irrevocable and need not be adequate or reasonable in relation to the size of the parent's estate. It would seem to follow, from all those negatives taken together, that any sort of gift, to an after-born child, unless completely abrogated during the parent's life, can be held by a surrogate to have " provided for " the child by a " settlement ".

We are told that it is all a matter of intent, and that, when such a gift or transfer has been made, the intent thereof becomes a question of fact for the surrogate. Examination of the cases cited reveals that in many of them there was no real proof that the parent-donor, making a gift to his child, ever had any idea he was thereby " providing " for the child after his own death, or that he ever intended a " settlement " or knew of the existence of that legal term, or of the concept it covers. The present state of the law is, therefore, that if a parent has, for instance, taken out any life insurance policy with his after-born child as a beneficiary, an appropriate finding of intent can be made, and that is the end of the whole matter.

During a parent's life his children may be " provided for " after his death, only by the definite, permanent setting aside of property for that special purpose. The legislative use of the word " settlement " further delimits all that, by requiring that the " providing " be done in a particular way, that is, by a " settlement ". A careful historical study of that word's meaning can be found in *Matter of Stern* (189 Misc. 639, 650–652). At the very least it requires a writing signed by the parent, and some evidence that the gift or transfer was made for the purpose of after-death support of the beneficiary. That whole idea is set at naught by holdings that the casual purchase of a small life insurance policy, or the impulsive handing over of a small bank account, or securities of small value, is a " settlement " which " provides " for the child-beneficiary after the latter's death, as a substitute for a testamentary provision.

It seems to me that to give section 26 any useful meaning, it must be held to require; first, that a gift or transfer, to constitute provision for a child by settlement, be in a writing subscribed by the parent; second, that it be absolute, not contingent;

and, third, that there be some real, substantial, weighty evidence, inside or outside the writing, that the maker thereof intended it to be a " settlement " by which his child would be " provided for " after his death. Certainly, the third of those requisite elements is missing in the present case.

LOUGHRAN, Ch. J., LEWIS, CONWAY and FROESSEL, JJ., concur with FULD, J.; DESMOND, J., dissents in opinion in which DYE, J., concurs.

Order affirmed, etc.