In re ESTATE OF Lazaro Garza AYALA, Deceased.

No. 04–83–00535–CV.

Court of Appeals of Texas, San Antonio.

Dec. 18, 1985.

Rehearing Denied Jan. 22, 1986.

Emilio Davila, Jr., Laredo, John F. Ryan, Austin, Ada Cronfel, Laredo, for appellant.

J.G. "Bumper" Hornberger, Jr., Dallas, for appellee.

Before CADENA, C.J., and T. GILBERT SHARPE, Assigned Justice.

## OPINION

T. GILBERT SHARPE, Assigned Justice.*

This is a will contest case. Lazaro Garza Ayala died in 1976 at the age of 77, leaving behind two wills, six children and property in both the United States and the Republic of Mexico. The decedent was a citizen and resident of Mexico, and he died there. In 1953, he executed a will devising his property in the United States to his two sons, Lazaro Garza Ayala, Jr., and Francisco Garza Ayala. R.J. Benavides was named independent executor of the estate and Elmore H. Borchers was named alternate independent executor.

In 1971, the decedent executed a new will in Mexico that left "his real estate and personal or moveable property which might be in his possession at the time of his death" to Lazaro, Jr. and Francisco, subject to specific bequests to his wife and to his natural children, Cristobal, Elvira, Juan and Hilda. The will named Lazaro, Jr. executor of the estate. Juan and Hilda, who are parties to this appeal, were born after the execution of the 1953 will, but prior to the execution of the 1971 will.

After the decedent's death, Borchers filed an application to probate the 1953 will in Webb County, Texas. It was admitted to probate there on November 11, 1976, and Borchers was named independent exec-

* Assigned pursuant to TEX.REV.CIV.STAT.ANN. art. 1812(d) (Vernon Supp.1985).

utor. The 1971 will was probated in Mexico by Lazaro, Jr. and admitted to probate there on October 20, 1976.

The Texas probate proceedings generated three separate contests. One contest was filed by Cristobal and Elvira. It was severed from the balance of the proceedings, and was tried separately in 1981. The other two contests were filed separately by Juan and by Hilda. They are the subjects of this appeal.

On May 21, 1982, the parties entered into a settlement agreement in Mexico. The agreement provided that each party would receive the bequest made to each of them in the 1971 will. In addition, Juan, Elvira and Christobal were to receive 26 million pesos from Lazaro, Jr. and Francisco, and a house in Tampico Tamaulipas, Mexico. The second clause of the settlement agreement provided that Juan, Elvira and Cristobal relinquished any cause of action they might have relating to the decedent's estate either in Mexico or abroad, including the conflict presently existing in Webb County. It was established at trial that 21 million of the 26 million pesos had been paid to Juan, Elvira and Cristobal. Although not a party to this agreement, Hilda also took her bequest under the 1971 will—a one/half interest in a ranch known as the "Carvajal Ranch."

The contests to the proceedings in Texas were not abated. Both Juan and Hilda claim to be the natural children of the decedent although they were born to women other than the decedent's wife. They alleged that they are pretermitted children as defined by TEX.PROB.CODE § 67 (Vernon 1980) and, as such, are entitled to an intestate share of the decedent's estate. Hilda further alleges that the decedent acknowledged her as his child in a proceeding in Mexico in 1960. Borchers, Lazaro, Jr. and Francisco answered raising several defenses including compromise and settlement, election of remedies, estoppel, and that Juan and Hilda are not pretermitted children. They also raised a plea in abatement alleging that the 1971 will and its probate proceeding took precedence over the proceedings involving the 1953 will. Borchers,

Lazaro, Jr. and Francisco have briefed this case together, and they are sometimes referred to collectively in this opinion as "Borchers."

Following a trial to the court, a take nothing judgment was entered against Juan and Hilda. In its judgment, the court made the following findings:

[T]he Court was of the opinion that Plaintiffs Juan Garza De La Pena, and Christobal Garza De La Pena and Elvira Garza De La Pena, effectively settled their claims in the estate proceedings of Lazaro Garza Ayala under the settlement agreement of May 21, 1982, which this Court finds to be valid and binding on the parties, and further that Plaintiff Hilda Lamar De La Pas took her share of the estate of Lazaro Garza Ayala under the 1971 will of the deceased by receiving fifty percent (50%) of the Carvajal Ranch, and, therefore, that neither Plaintiff is a pretermitted child under the Texas Probate Code. The Court was further of the opinion that the sum of five million pesos (5,000,000.00) is left owing and unpaid by Defendants Lazaro Garza Ayala, Jr. and Francisco Garza Ayala to Plaintiff Juan Garza De La Pena and to Christobal Garza De La Pena and Elvira Garza De La Pena under the settlement agreement of May 21, 1982, and that Defendants should pay this sum into the registry of the Court.

In accordance with its findings, the court ordered Borchers to pay five million pesos into the registry of the court.

Juan and Hilda have appealed. Borchers brings a limited appeal complaining of the trial court order that Lazaro, Jr. and Francisco deposit five million pesos into the court's registry.

■■■ Both Juan and Hilda seek a share of testator's estate under the 1953 will on the ground that they are pretermitted children. The Texas pretermission statute provides that if a testator has a child or children at the time he makes his will and, at his death, leaves a child or children born or adopted after the making of his will and not provided for in the will, the after-born or after-adopted children, unless provided

for by settlement, succeed to the same portion of the testator's estate as they would have been entitled to if the testator had died intestate. TEX.PROB.CODE ANN. § 67(a) (Vernon 1980). The object of the pretermission statute is to guard against testamentry thoughtlessness; it is not a limitation on a testator's power to dispose of his estate. *McQueen v. Stephens,* 100 S.W.2d 1053, 1056 (Tex.Civ.App. —Amarillo 1937, no writ). For the statute to apply it must appear from the will, interpreted in light of all the circumstances, that the failure to provide for the child or decendant was accidental, or due to inadvertence or oversight. *Pearce v. Pearce,* 104 Tex. 73, 134 S.W. 210, 214 (1911). Thus, section 67 provides that the statute will not apply if the child was "provided for by settlement." We have found no Texas cases interpreting the quoted phrase. New York, however, has a similar pretermission statute, N.Y.EST. POWERS & TRUSTS § 5–3.2 (McKinney 1981), and an extensive case law interpreting it. These cases are instructive.

■ New York case law agrees that the purpose of such statutes is to guard against an inadvertant or unintentional disinheritance and to make just provision for a probable oversight. *In re Faber's Estate,* 305 N.Y. 200, 111 N.E.2d 883, 885 (1953); *In re Smith's Will,* 1 Misc.2d 451, 147 N.Y.S.2d 706, 708 (1955). In determining whether a "settlement" has been made, each case must be considered on its own facts, and it is the intent of the testator that must control. *In re Faber's Estate,* 111 N.E.2d at 885. A settlement need not be of any particular kind or assume any particular form. *Id.* at 886. The adequacy of the settlement is not a matter to be considered by the court, nor is it material that the settlement was less favorable than the provision made for other children. *In re Georger's Will,* 48 Misc.2d 579, 265 N.Y. S.2d 266, 267 (1965); *In re Kaplan's Estate,* 19 Misc.2d 921, 189 N.Y.S.2d 306, 307 (1959). It simply has been held that any act of the testator indicating an intention to make future provision for the child would fulfill the requirement for a settlement. *In re Faber's Estate,* 111 N.E.2d at 885.

There are many examples of such settlements in New York case law. A trust, of which the child is the beneficiary, may constitute a settlement. *In re Crawford's Estate,* 64 Misc.2d 758, 315 N.Y.S.2d 890, 894 (1970). So may a life insurance policy naming the child as beneficiary. *In re Faber's Estate,* 111 N.E.2d at 887; *In re Fredenthal's Estate,* 25 Misc.2d 1068, 206 N.Y. S.2d 194, 197 (1960). A saving's account in the child's name has been found to be a settlement, *In re Georger's Will,* 265 N.Y. S.2d at 267; *In re Staub's Will,* 17 Misc.2d 215, 184 N.Y.S.2d 136, 137 (1959), as has an annuity for the child under a pension plan. *In re Staub's Will,* 184 N.Y.S.2d at 137. We find the New York cases persuasive.

■ We think it obvious under the facts of this case that the decedent intended to and did make a settlement for Juan and Hilda in the 1971 will. How better to provide for one's children than to recognize them in a will and to devise them specific property in that instrument. It follows that since the decedent provided for Juan and Hilda by the settlement, they are not pretermitted children, and section 67 of the Probate Code has no application. *See also,* Annot., 170 A.L.R. 1345 (1947); 26A C.J.S. *Descent and Distribution* § 45 (1956).

■ Since we have decided that Juan cannot inherit by virtue of the pretermission statute, it is unnecessary to review Juan's points of error to determine whether the 1981 settlement agreement also precludes him from inheriting under the 1953 will. Yet we must review the settlement agreement in order to review Borchers' points of error. Borchers argues that the trial court erred in ordering Lazaro, Jr. and Francisco to deposit five million pesos into the registry of the court because the order is not supported by the pleadings, and because there is no evidence to support the order. Even if there were no pleadings to support the court's order, the issue of the performance of the settlement agreement was tried by consent when Borchers' attorney introduced into evidence a copy of the agreement and copies of Mexican legal documents concerning the agreement. He read from these documents to show that 21

million pesos had been paid by his clients in accordance with the agreement. On cross-examination he elicited from Juan that he had received the 21 million pesos from Lazaro and Francisco. We hold that the issues of the amounts paid and the amount due under the settlement agreement were tried by the express consent of the parties. TEX.R.CIV.P. 67. We further hold that this evidence was sufficient to support the court's judgment that the remaining 5 million pesos should be paid into the registry of the court. Borchers' points of error are overruled.

The judgment of the trial court is affirmed.