**The ESTATE OF Leroy GORSKI, Appellant,**

v.

**Diane V. WELCH, Appellee.**

**No. 04–98–00333–CV.**

Court of Appeals of Texas, San Antonio.

April 21, 1999.

---

**300**

James C. Bollom, Billings & Solomon, P.C., Houston, for Appellant.

Teri A. Walter, Walter, Burdzinski & Company, L.L.P., Houston, for Appellee.

Before PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

The Estate of Leroy Gorski ("Estate") appeals a judgment making an interlocutory summary judgment that ordered the Estate to pay child support final and further ordering the Estate to distribute a one-fourth interest in all of its property to Diane V. Welch ("Welch"), as next friend of Marissa Leigh Welch ("Marissa"). Marissa was found to be entitled to the one-fourth interest as a pretermitted child of the decedent, Leroy Gorski ("Gorski"). The Estate raises ten issues in its brief, basically asserting: (1) the Estate was not bound to continue paying child support, health insurance and one-half of uninsured medical expenses after Gorski's death; (2) if the Estate was bound to pay the child support, the Estate was entitled to a credit for the amount of Social Security death benefits that were being paid to Marissa; and (3) Marissa was not a pretermitted child or, if she was, the Estate was not obligated to continue paying child support. We reverse that portion of the trial court's judgment ordering the Estate to distribute a 1/4th interest in all of its property to Marissa but affirm the remainder of the trial court's judgment.

### Factual and Procedural History

Marissa was born in February of 1991. In June of 1991, Gorski consented to the terms of a final decree in a paternity suit and stipulated that the decree was a contract. The decree ordered Gorski to pay $500 per month in child support, maintain medical and health insurance providing coverage for Marissa, and pay Welch one-half of any uninsured medical expenses incurred upon prior approval of Gorski and Welch, unless such expenses were the result of an insurance policy deduction.

Gorski died testate in 1996. His last will and testament, which was executed in August of 1990, left his entire estate to his three adult sons. The 1990 will does not mention his two adult daughters, who were expressly excluded from his prior 1973

will, or Marissa. Upon Gorski's death, Marissa began receiving $949 in Social Security death benefits.

In April of 1997, Welch sued Kirk Gorski, one of Gorski's sons who was the independent executor of the Estate, in both her individual capacity and as next friend of Marissa. Welch claimed the Estate had breached its contractual obligation to pay child support, maintain health insurance and pay uninsured medical expenses. Welch further claimed that Marissa was entitled to share in the distribution of the Estate. Finally, Welch requested a temporary injunction to require immediate payment of all child support and medical expense arrearages and to prohibit further distributions of the Estate until the case was finally determined.

In July of 1997, Welch moved for an interlocutory summary judgment. After a hearing held on August 1, 1997, the trial court granted the summary judgment, ordering that Welch recover a judgment for past due child support, unpaid medical expenses, reimbursement for health insurance premiums, and a one-fourth interest in the property of the Estate. The summary judgment further granted a temporary injunction, requiring the Estate to provide medical insurance and to pay for uninsured medical expenses as provided for in the paternity decree.

On August 25, 1997, the case was presented to the trial court in a trial on the merits. The trial court noted that it ruled in its summary judgment that the paternity decree's terms were contractual and binding on the estate and also addressed the effect of the social security death benefits. The trial court stated that the only issue before it was whether Marissa qualified as a pretermitted child under section 67 of the Probate Code. The trial court concluded that there was no credible evidence of Gorski's intent to have the paternity decree "otherwise provide for" Marissa as a pretermitted child and ordered that Marissa was entitled to receive a 1/4th interest in all of the Estate's property.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Although not listed as a separate issue, the Estate raises a complaint about the trial court's failure to file findings of fact and conclusions of law. The trial court pronounced its judgment on August 25, 1997; however, the final judgment was not signed until February 26, 1998. The Estate filed a request for findings of fact and conclusions of law on September 18, 1997 and a notice of past due findings of fact and conclusions of law on October 22, 1997.

Rule 306c of the Texas Rules of Civil Procedure provides that a request for findings of fact and conclusions of law will not be held ineffective because it is prematurely filed. TEX.R. CIV. P. 306c. A prematurely filed request will be deemed to be filed on the date the judgment was signed. *Id.* Since the trial court did not sign its judgment until February 26, 1998, the request for findings of fact and conclusions of law was prematurely filed; therefore, the request was deemed filed on the date the judgment was signed. *Id.*; *Echols v. Echols*, 900 S.W.2d 160, 161 (Tex.App.—Beaumont 1995, writ denied).

■ Although rule 306c applies to requests for findings of fact and conclusions of law, it does not apply to a notice of past due findings of fact and conclusions of law. *See* TEX.R. CIV. P. 306c; *Echols*, 900 S.W.2d at 161–62. The notice of past due findings was factually incorrect both when it was filed and when the judgment was signed, as the findings would not be late until twenty days after the date the judgment was signed. *Echols*, 900 S.W.2d at 162. Such a factually incorrect, premature reminder does not serve the purpose for the notice. *Id.* The record does not indicate that the Estate otherwise brought the matter to the trial court's attention during the thirty day period following the date the findings were due. *Id.* Since the Estate failed to file a timely notice of past due findings, it waived its complaint regarding

the trial court's failure to file findings of fact and conclusions of law.

### ESTATE OBLIGATION TO PAY CHILD SUPPORT

 The Estate contends that the obligation to pay child support terminated upon Gorski's death because the paternity decree did not expressly provide that the obligation would not terminate upon his death as was the case in *De La Garza v. Salazar*, 851 S.W.2d 380, 382 (Tex.App.— San Antonio 1993, no writ). Welch counters that since the parties stipulated in the paternity decree that the decree was a contract, the obligation survived Gorski's death under the law established in *Hutchings v. Bates*, 406 S.W.2d 419 (Tex.1966). The Estate would distinguish *Hutchings* based on the absence of a written agreement between the parties separate from the paternity decree.

In *Hutchings v. Bates*, the issue presented was whether a divorce decree and the property settlement agreement upon which it rested created an obligation that bound the estate of a father to make child support payments accruing after his death. 406 S.W.2d at 419. The Texas Supreme Court noted that where the duty to make support payments arises from an agreement of the parties, their rights and obligations in that respect are governed largely by the rules relating to contracts. *Id.* at 420. In such a case, whether the obligation to pay support continues after the obligor's death is determined by the intention of the parties as disclosed by the provisions of the agreement and the surrounding circumstances. *Id.* The Court further noted that the agreement did not state that it would be binding on the father's estate, heirs or personal representatives. *Id.* at 421. The Court then explained the split of authority among the various jurisdictions as to whether the obligation should continue under those circumstances. *Id.* The Court concluded that although the different approaches adopted by other jurisdictions may work a hardship in individual cases, courts were more likely to carry out the intention of the parties and achieve just results if they adhered to basic principles of contract law. *Id.* The Court held that "where the contract and judgment provide for periodic support payments to be made until the occurrence of a specified event the obligor's estate is responsible for installments accruing after his death unless it fairly appears from other stipulations or the surrounding circumstances that it was intended for the obligation to terminate upon death." *Id.* The Court asserted that the absence of a contractual provision binding the estate and the fact that the father maintained two annuity insurance policies in force for the benefit of the children were not sufficient to show that the parties intended for the child support payments to terminate upon the father's death. *Id.* The father bound himself to make child support payments in a definite amount for a definite period of time; therefore, the obligation was binding on the estate. *Id.* at 422.

Similarly, under section 154.006 of the Texas Family Code, a child support obligation does not terminate where the parties agree in writing that it would continue. TEX. FAM.CODE ANN. § 154.006 (Vernon 1996). In this case, the parties stipulated that the paternity decree was a contract and consented to its terms. By stipulating that the terms of the decree were a contract, the parties obviated the need for a separate written agreement. Therefore, we must analyze the paternity decree to determine whether the parties intended for the child support obligation to continue after Gorski's death.

The paternity decree required Gorski to pay a definite amount in child support for a definite period of time. There are no other stipulations or circumstances suggesting that the parties intended for the obligation to terminate upon Gorski's death. A similar analysis is applicable with regard to the health insurance and uninsured medical expense obligations. We conclude that the trial court did not err in concluding that the paternity decree

was binding on the Estate and that the child support obligation did not terminate upon Gorski's death.

### Social Security Death Benefits

In its brief, the Estate also contends that it is entitled to a credit for the amount of social security death benefits paid to Marissa in the event it is obligated to continue to make the child support payments. Welch responds that the only Texas case to consider the issue has rejected the Estate's position, and unlike benefits paid due to retirement or disability where the credit is required to ensure that the father is able to continue to support himself given the change in circumstances, the credit is not necessary where benefits are paid due to the father's death because the father is no longer in need of support. Welch asserts that the question then becomes "who gets the 'extra' money—the child or the will beneficiaries?"

Three views exist among the state courts regarding whether an estate is entitled to a credit for social security death benefits: (1) a view that the estate is entitled to a credit; (2) a view that the allowance of a credit is discretionary; and (3) a view that the credit is not allowed unless intended by the parties. Michael A. DiSabatino, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447, 507–13 (1995). In addition to the credit issue, some jurisdictions hold that the credit is automatic while others hold that the issue of credit must be considered by a court in a modification proceeding. *Id.* at 510; *see also Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10, 12–13 (1993).

In *Lake v. Lake*, the Dallas court of appeals considered this issue and the split of authority. 899 S.W.2d 737 (Tex.App.— Dallas 1995, no writ). The Dallas court noted that those courts that allow the credit reason that social security benefits are not gratuitous, but represent money earned and contributed by the obligor par-

ent. *Id.* at 740. Courts permitting the credit liken the benefits to the proceeds from a life insurance policy, which substitute for income no longer received and provide for payment in the event of the obligor's death. *In re Marriage of Meek*, 669 P.2d 628, 630 (Colo.App.1983). The courts further explain that the purpose of the support award is to benefit the child and its purpose is fulfilled regardless of the source of the payment. *Gilford v. Wurster*, 24 Ohio App.3d 77, 493 N.E.2d 258, 260 (1983).

The Dallas court also noted the view that a credit should not be allowed unless intended by the parties. 899 S.W.2d at 740. Under this view, which the Dallas court adopted, the parties are presumed to know of the availability of the social security benefits at the time their agreements and divorce decrees are entered, and in the absence of a contractual provision allowing a credit for such benefits, the parties intend not to permit such a credit. *Id.* (citing *Pessein v. Pessein*, 68 Wash.App. 893, 846 P.2d 1385 (1993); *Cohen v. Cohen*, 246 So.2d 581, 583 (Fla.Dist.Ct.App.), *writ discharged*, 255 So.2d 524 (Fla.1971); *Heppner v. McCombs*, 82 Nev. 86, 411 P.2d 123 (1966)).

The Dallas court did not discuss the third view, i.e., that the credit is discretionary. *See Board v. Board*, 690 S.W.2d 380, 381 (Ky.1985); *Gibson v. Gibson*, 110 Mich.App. 666, 313 N.W.2d 179, 181 (1981). Under this view, the benefits are a factor to be taken into consideration by a trial court in a proceeding to modify support or in an action to collect unpaid support. *See Gibson*, 313 N.W.2d at 181. Whether the credit is given is within the trial court's discretion and is reviewed on appeal for an abuse of discretion. *Board*, 690 S.W.2d at 381. Courts that adopt the automatic credit approach contend that a modification hearing is not required because there is no change in the amount of the court's order. *Brewer*, 509 N.W.2d at 17. The only change is the source of the payment. *Id.*

This court has noted that an obligor may be entitled to a credit for disability benefits received, but we did not reach the complaint asserting that the trial court erred in adding statutory child support on top of the disability benefits because the issue was not preserved for review. *Johnson v. Johnson,* 948 S.W.2d 835, 838–39 (Tex.App.—San Antonio 1997, writ denied). In this case, we adopt the view that the credit should be allowed. This view is supported by the reasoning in cases discussing the right to a credit for benefits paid due to retirement or disability. *In re Allsup,* 926 S.W.2d 323 (Tex.App.—Texarkana 1996, no writ); *see also In re K.E.T.,* 974 S.W.2d 760, 762 (Tex.App.—San Antonio 1998, no pet.) (citing *Allsup* as well-reasoned but distinguishing it based on factual difference).

■ As a matter of law, therefore, we would hold that the Estate was entitled to a credit for the social security death benefits. However, during oral argument, the attorney representing the Estate asserted that the Estate would be willing to concede that Marissa is entitled to both the child support payment and the social security death benefit so long as Marissa was not entitled to share in any portion of the Estate as a pretermitted child. This declaration: (1) was made during the course of a judicial proceeding; (2) was contrary to the Estate's prior position, and (3) was deliberate, clear and unequivocal. *See U.S. Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). In addition, giving conclusive effect to the declaration will be consistent with public policy. *Id.* We rely upon the receipt of the child support payments and social security benefits by Marissa to support our finding that she is not entitled to receive a portion of the Estate as a pretermitted child; therefore, "it would be as absurd, as it manifestly would be unjust," to allow the Estate to argue that Marissa should receive a reduced payment from the Estate, when the payment from the Estate is relied upon to deny Marissa any portion of the Estate. *Id.* Finally, the declaration is one that can be relied upon to favor disallowing the credit. *Id.*

## PRETERMITTED CHILD

The Estate argues that if the child support obligation did not terminate upon Gorski's death, the trial court erred in concluding that Marissa was a pretermitted child because she was "otherwise provided for" through the continued payment of the child support payments and social security death benefits. Welch responds that the child support payments did not "otherwise provide for" Marissa, because in order to comply with the statute the other provision must be intended to take effect at the testator's death. Welch further responds that the social security death benefits did not "otherwise provide for" Marissa because the other provision must be made by the testator.

■ Section 67 of the Texas Probate Code defines a pretermitted child as a child of a testator who, during the lifetime of the testator, or after his death, is born or adopted after the execution of the will of the testator. TEX. PROB.CODE ANN. § 67(c) (Vernon Supp.1998). Since Marissa was born after Gorski executed his will, she meets this definition.

A pretermitted child is entitled to succeed to a portion of the testator's estate whenever he or she is not mentioned in the testator's will, provided for in the testator's will, or otherwise provided for by the testator. *Id.* at § 67(a). A child is provided for or a provision is made for a child if a disposition of property to or for the benefit of the pretermitted child, whether vested or contingent, is made: (1) in the testator's will, including a devise or bequest to a trustee as authorized by section 58(a) of the Code; or (2) outside the testator's will and is intended to take effect at the testator's death. *Id.* at 67(d).

■ The object of the pretermission statute is to guard against testamentary

thoughtlessness; it is not a limitation on a testator's power to dispose of his estate. *In re Estate of Ayala,* 702 S.W.2d 708, 711 (Tex.App.—San Antonio 1985, no writ). For the statute to apply, it must appear from the will, interpreted in light of all the circumstances, that the failure to provide for the child or descendent was accidental, or due to inadvertence or oversight. *Id.* In *Ayala,* the court was interpreting an earlier version of the statute, which provided that a child would not succeed to a portion of the testator's estate if the child was "provided for by settlement." *Id.* The court noted the absence of Texas law interpreting the provision but concluded that New York had a similar pretermission statute and had interpreted all of the following as settlements providing for the child: (1) a trust of which the child is the beneficiary; (2) a life insurance policy naming the child as the beneficiary; (3) a savings account in the child's name; and (4) an annuity for the child under a pension plan. *Id.* The court noted that whether a "settlement" had been made must be determined from the facts of each case, and it is the intent of the testator that controls. *Id*

■ In 1989, section 67 was amended, and the amendment clarified when a child should be considered "otherwise provided for." If a disposition of property outside the will is relied upon as providing for the child, the disposition must be intended to take effect at the testator's death.

■ With regard to the social security death benefits, Gorski did dispose of his property through the payment of social security taxes and the result of that payment, the receipt of social security death benefits, took effect upon his death. New York has held that the provision of a life insurance policy naming the child as beneficiary provides for the child by settlement. Social security death benefits, like a life insurance policy, provide for a child upon death. In addition, Gorski's intention that the child support payments would continue after his death is evidence that he did not exclude Marissa from his will due to inadvertence or oversight. Knowing that the Estate would be bound to pay Marissa child support payments and that Marissa would receive social security death benefits, Gorski elected to exercise his power to dispose of his estate by exclusively leaving it to his sons.

## Conclusion

The trial court did not err in concluding that the paternity decree was binding on the Estate and that the child support obligation did not terminate upon Gorski's death. Although we adopt the view that a credit is generally allowed for social security death benefits, based on the declaration made by the Estate's attorney during oral argument, we hold that Marissa is entitled to receive both the child support payments and the social security death benefits. With regard to Marissa's right to a share of the Estate under the pretermission statute, we conclude that Gorski did not fail to provide for Marissa due to accident, inadvertence or oversight, because Marissa has been provided for through the child support payments and social security death benefits.

That portion of the trial court's judgment ordering the Estate to distribute a 1/4th interest in all of its property is reversed. We hold that Marissa is not entitled to share in the distribution of the Estate as a pretermitted child. The remainder of the trial court's judgment is affirmed.

Dissenting opinion by: SARAH B. DUNCAN, Justice.

SARAH B. DUNCAN, Justice, dissenting.

I am unable to join the majority's opinion or concur in its judgment. I therefore dissent.

### Failure to File Findings and Conclusions

The majority holds Rule 306c, Tex.R. Civ. P., does not apply to a prematurely

filed reminder of past due findings of fact and conclusions of law. In doing so, the majority relies upon *Echols v. Echols,* 900 S.W.2d 160 (Tex.App.—Beaumont 1995, writ denied).[1] However, the *Echols* Court failed to consider what was then Rule 58(a) of the Texas Rules of Appellate Procedure. *See* Tex.R.App. P. 58(a) (repealed). Under Rule 58(a), an appellate court was not required to consider a premature instrument ineffective. *See id.* This rule continues today in Rule 27.2, Tex.R.App. P., which permits an appellate court to treat any premature action "as if [it] had been taken after the order was signed." Nor does the majority consider the Supreme Court of Texas's repeated admonition " 'the decisions of the courts of appeals [should] turn on substance rather than procedural technicality.' " *City of San Antonio v. Rodriguez,* 828 S.W.2d 417, 418 (Tex. 1992) (per curiam) (quoting *Crown Life Ins. Co. v. Estate of Gonzalez,* 820 S.W.2d 121, 121 (Tex. 1991) (per curiam)).

I would treat the Estate's premature reminder as though it were timely filed under Rule 27.2, Tex.R.App. P., and, for the courts' benefit as well as the parties', I would abate this appeal to afford the trial court an opportunity to file its findings and conclusions.

### CHILD SUPPORT

Relying upon *Hutchings v. Bates,* 406 S.W.2d 419 (Tex.1966), and section 154.006 of the Texas Family Code, the majority holds the child support order is binding on the Estate because it required Gorski to pay child support for a definite period of time and is silent regarding whether Gorski and Welch intended child support to continue after his death. I disagree with the majority's analysis and its conclusion.

In its 1966 opinion in *Hutchings,* the Texas Supreme Court held "where the contract and judgment provide for periodic support payments to be made until the occurrence of a specified event the obligor's estate is responsible for installments accruing after his death unless it fairly appears from other stipulations or the surrounding circumstances that it was intended for the obligation to terminate upon death." *Hutchings,* 406 S.W.2d at 421. In other words, child support continues after the obligor's death unless "other stipulations or the surrounding circumstances" indicate the parties intended that it terminate. *See id.*

In 1973, however, the Texas Legislature first enacted what is now section 154.006 of the Texas Family Code. Act of May 15, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 14.05(d), 1973 Tex. Gen. Laws 1411, 1424. Then and now, this section provides that child support terminates upon the "death of ... a parent ordered to pay child support" "[u]nless otherwise agreed in writing or expressly provided in the order." Tex. Fam.Code Ann. § 154.006 (Vernon 1996). In my view, this provision legislatively overruled *Hutchings* in two respects. First, it reversed the *Hutchings* presumption. Under *Hutchings,* if the agreement is silent, child support continues unless stipulations and circumstances indicate it does not, while under section 154.006, child support terminates unless the parties indicate it does not. Second, under *Hutchings,* the parties' intent is subject to proof by evidence extrinsic to the agreement, while under section 154.006, the parties' intent is to be determined solely by reference to the terms of the parties' written agreement and the provisions of the order.

Because Gorski and Welch did not agree in writing that child support would continue after Gorski's death, and this issue is not resolved in the child support order, I would hold Gorski's child support obligation terminated at his death pursuant to section 154.006 of the Texas Family Code.

---

1. To the same effect is *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 255 (Tex.1984), in which the reminder was filed· before the 1984 amendment to Rule 306c broadened it to include requests for findings and conclusions and before the 1986 enactment of the Texas Rules of Appellate Procedure.

### SOCIAL SECURITY SURVIVOR BENEFITS

The majority opinion "would hold that the Estate was entitled to a credit for the social security death benefits" except the Estate's attorney waived the complaint during oral argument. I agree the Estate is entitled to a credit and would so hold. But I cannot agree the Estate's attorney unequivocally waived this complaint during oral argument. The purported waiver is not in writing; it is not recorded on video or audiotape; and it is not otherwise reflected in this court's file. Nor do I construe the Estate's attorney's words at oral argument to unequivocally waive the Estate's complaint as a matter of fact. And I would not do so as a matter of policy, at least not without an express, unequivocal, and recorded waiver. To do otherwise places too great a burden on appellate advocates and injects too much uncertainty into the appellate process.

### PRETERMITTED CHILD

The record establishes Gorski "otherwise provided for" Marissa through social security survivor benefits, and it strongly suggests he intentionally omitted her from his will. It is on this last point, however, that I would appreciate having the trial court's findings of fact and conclusions of law before making a final decision.

### CONCLUSION

For the reasons stated above, I would hold the Estate is not bound by the child support decree and is entitled to a credit for social security survivor benefits. I would not decide whether Marissa is entitled to a share of Gorski's estate without the trial court's findings of fact and conclusions of law. I therefore dissent from the majority's judgment and do not join its opinion.