

**NUMBER 13-20-00547-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

**IN THE INTEREST OF M.L.P., J.L.P. AND M.A.P., CHILDREN**

**On appeal from the 25th District Court
of Gonzales County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

This is an appeal of an order modifying the parent-child relationship with respect to minor children M.L.P., J.L.P., and M.A.P. By two issues, appellant Jessica Ochesky argues the trial court abused its discretion by (1) considering the testimony and report of a court-appointed custody evaluator, and (2) granting appellee Jon Pick the exclusive right to designate the children's primary residence. We affirm.

### I.    BACKGROUND

Ochesky and Pick were married in 2005. M.L.P., a girl, was born in 2005; J.L.P., a

boy, was born in 2008; and M.A.P., a girl, was born in 2013. Pick filed for divorce in 2017, and the trial court signed an agreed divorce decree on September 26, 2017. The decree provided, in relevant part, that both parties would be joint managing conservators of the children, generally with alternating seven-day periods of possession throughout the year; that the primary residence of the children shall remain in Gonzales County; and that neither party is obligated to pay child support.

On November 21, 2019, Ochesky filed a petition to modify the parent-child relationship, asserting without detail that "[t]he circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." She sought to modify the decree to provide generally that Pick shall have possession of the children: (1) "not more than one weekend per month of [Pick's] choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend"; and (2) "for forty-two consecutive days" during the children's summer vacation, "to be exercised in no more than two separate periods of at least seven consecutive days each." The petition further requested that Pick be ordered to pay monthly child support.

Pick filed an "Application for a Protective Order" on March 12, 2020, in which he alleged that Ochesky "committed acts of abuse toward M.L.P. that constitute family violence." That same day, the trial court issued a temporary ex parte order enjoining Ochesky from, among other things, communicating directly with or going within 100 yards of Pick or the children. The order set a hearing for March 16, 2020. On March 16, Pick moved to extend the temporary order on grounds that "service has not been perfected on

2

[Ochesky]." The trial court granted the motion and set a hearing for March 30, 2020.[1]

Pick filed a "Motion for Child Custody Evaluation" on June 17, 2020, and Ochesky filed a response opposing the motion. The trial court granted the motion on July 9, 2020, and designated Elizabeth Brown to perform the evaluation. Brown conducted the evaluation and filed a "Social Study Report" with the trial court on August 17, 2020. On August 25, 2020, the trial court rendered temporary orders maintaining both parties as joint managing conservators but granting Pick the right to designate M.L.P.'s primary residence and stating that Ochesky's possession of M.L.P. shall be "at times mutually agreed to in advance by the parties." The orders provided that the primary residence of J.L.P. and M.A.P. "shall be restricted to Gonzales County."

## A.      Evaluator's Report and Testimony

At a hearing on Ochesky's petition to modify on October 22, 2020, Brown testified that she is a mental health specialist with the United States Probation Office and has a private practice in which she does family counseling and child custody evaluations. She said that she evaluated the children at issue and submitted a written report within thirty days, as ordered by the court. Brown referred extensively to her written report during the hearing; however, the report itself was not offered into evidence at the hearing.

According to Brown's report, at the time of her evaluation, Pick was living with his girlfriend Angela Burk in Oklahoma. Brown conducted two home visits in August of 2020 during which she observed Pick caring for the children. At the first visit, the two younger children "were interviewed outside while they were swimming in an above ground

---

[1] Ochesky moved to vacate the protective order, but no ruling on the motion appears in the record. The order expired by its own terms after twenty days.

3

swimming pool having a good time as evidenced by their laughing and smiling."[2] At the second visit, "[J.L.P.] was found asleep after having stayed up late, [M.A.P.] was showering and [M.L.P.] was getting ready putting on make-up." The report noted that the residence was "clean and nicely furnished" and that "[t]here were three large, friendly, outdoor dogs in the backyard." At the hearing, Brown recalled that Ochesky told her that Burk's 17-year-old daughter "slapped" J.L.P. in the face.[3]

The report states that Brown conducted a home visit at Ochesky's residence in Gonzales, Texas, in July 2020. The residence consists of "two mobile homes connected by a hallway, a fifth wheel trailer, and a multicar garage" on two acres of property. Ochesky reported that her parents, her sister, and J.L.P. live in one of the mobile homes; while her two brothers and two unrelated individuals live in the second mobile home. At the hearing, Brown opined that the trailer Ochesky resided in "was not livable at the time" in part because "[t]here's no room for each of these children."

Brown's report states that Pick has a commercial driver's license and was previously employed as a truck driver earning $30,000 to $69,000 per year; however, he resigned from that position so that "he would not be away from home." The report states: "[Pick] reports being employed [sic] since April 2020 and is receiving unemployment checks in the amount of $3,720 a month." He is now pursuing an insurance license. Ochesky was employed since 2007 "as a substitute teacher earning between $60.00–$75.00 per day" but she has not taught since the pandemic started and now does "odd

---

[2] Brown's report says that her first visit with Pick and the children took place at Burk's mother's house in Yukon, Oklahoma. The second visit took place at Burk's residence in Newcastle, Oklahoma. We take judicial notice that Newcastle, Oklahoma is approximately 438 miles away from Gonzales, Texas.

[3] Ochesky also reported that Burk's daughter "forced [M.A.P.] to vape," but Brown said she "didn't find any truth to that" from her interviews. Brown testified that Burk's daughter does not live with Burk.

4

jobs such as transporting private individuals who are disabled, or babysitting."

According to Brown's report, Pick reported that he "has an unreported law enforcement domestic violence history with [Ochesky] who became physically abusive towards him whenever she became upset." Pick reported to Brown that "[o]n average [Ochesky] punched him in the face and 'smacked' him around, quarterly." Pick reported that he has been arrested twice: once in 2016 for aggravated assault against his brother, and once in 2019 for assault against his second wife.[4] Brown testified she was not surprised that a magistrate issued an emergency protective order against Pick in September of 2017; however, she said Pick did not disclose that protective order to her. Upon inquiry by Ochesky's counsel, Brown explained that she did not find any indication that Pick was selling marijuana out of his home in Oklahoma, nor did she find any marijuana at Pick's home.

Ochesky reported to Brown that she was arrested in January of 2017 for assaulting M.L.P.; however, she said formal charges were not filed. Ochesky told Brown that Child Protective Services and the Children's Advocacy Center both "investigated with negative findings." Brown's report stated that criminal background checks of both parties showed that neither had any prior criminal convictions.[5]

According to Brown, Ochesky reported that "she used to spank the kids as a form of discipline" but does not do so now "because [Pick] has taught the kids they can call the police" if she does. Pick reported that "he is not big on spanking the kids."

Brown stated that M.L.P. finished eighth grade at Gonzales Junior High School in

---

[4] Brown's report stated that Pick married his second wife in 2018 and remains married to her.

[5] The report also stated that Burk did not have a criminal history according to a check run by the Oklahoma State Bureau of Investigation.

5

2020; the child had good grades but eighteen unexcused absences during the 2019–2020 school year. M.L.P. told Brown that she would prefer to attend school in Oklahoma; she believed Pick's home is "nice, clean" and "better" than Ochesky's. M.L.P. also told Brown that Ochesky does not allow the children to go outside "since their paternal great-grandmother lives across the street."

J.L.P. finished seventh grade at North Avenue Intermediate School, where he had mediocre grades and sixteen unexcused absences during the 2019–2020 school year. He said his father is "in between mean and nice" whereas his mother is "nice" and "gets him everything he needs." When asked to draw his family, J.L.P. drew Pick and his siblings. J.L.P. told Brown that he "can share with [Pick] how he is feeling" but "does not share" with Ochesky.

According to Brown's report, M.A.P. finished second grade at Gonzales Elementary School in 2020; she had only one unexcused absence during the school year. M.A.P. told Brown that living with Pick is "much more fun" and that she wants to attend school in Oklahoma "because it is only four days a week." M.A.P. also reported to Brown that her mother "bribes" her and her siblings "because she is trying to make [them] stay with her."

In evaluating specific concerns raised by the parties, Brown reached the following conclusions, among others: (1) the children were adequately supervised and there were no safety concerns at Ochesky's home; (2) Ochesky and her parents regularly use profane language; (3) the sleeping arrangements at Ochesky's home "were not optimal"; (4) M.L.P. and Ochesky got into physical altercations, but those could have been "in response to [M.L.P.]'s behavior"; (5) Pick failed to provide health insurance for the

6

children as ordered by the court; (6) Pick often previously left the children with his grandmother, sister, and mother, but no longer does so; (7) Burk's mother and Burk's mother's husband have a marijuana business which is legal under Oklahoma law; and (8) the two younger children "are aware of the three marijuana plants growing in the backyard" of Burk's mother's house but "[t]he room which contains related business items . . . was locked and not available to the [children]."

Overall, Brown opined that she was concerned about the children's "awareness of the circumstances regarding the custody suit and related problems" as well as the excessive unexcused school absences for the two elder children. Brown was also concerned about Ochesky's "plan to relocate to the state of Colorado with her parents after the Court issues are resolved," along with the fact that Ochesky lived in three different locations in Texas during the pendency of the case. Finally, Brown stated "[i]t is obvious there is a strain in the relationship between [M.L.P.] and [Ochesky]."[6] Her report concluded:

> [I]t is recommended the [children] participate in family and individual counseling services. It is the recommendation of this evaluator that [M.L.P.] remain in the possession of [Pick]. In regard to [J.L.P.] and [M.A.P.], it is the recommendation[] the parties share joint managing conservatorship with the primary residence to [be] awarded to [Pick]. It is suggested that [Ochesky] be awarded all holidays that begin or end on a Monday or Friday in addition to major school breaks and holidays and half of the summer break.

## B.    Parties' Testimony

Pick testified that he was arrested twice, but he denied that he ever assaulted Ochesky. He also denied any involvement in the marijuana business run by Burk's

---

[6] Brown noted that "[M.L.P.'s] mobile phone has [Ochesky]'s contact information listed as 'Queen Crackhead.'" M.L.P. also showed Brown "a picture where [Ochesky] was extending her middle finger and stated this is how [Ochesky] treats her."

mother—he stated "we don't really go over" to Burk's mother's house "but when we do go over there, we've always got an eye on [the children]." When asked whether he talked to the children about marijuana, Pick stated he "kind of gave the same speech that you would with alcohol." Pick conceded that he failed to provide health insurance for the children "[f]or a brief period" while he was between jobs, but that "[Ochesky] is now providing [health insurance] through the State." Upon questioning by Ochesky's counsel, Pick stated he was not aware that M.L.P. "is holding herself out on her Facebook page as being 18 years of age."

On cross-examination by his counsel, Pick stated that the September 2017 protective order against him stemmed from an incident where he allegedly threatened Ochesky's brother with a gun. He stated that, because Ochesky lived in the same residence as her brother, the protective order enjoined him from contacting her as well. Pick testified that he has good relationships with the children, though he has been unable to communicate with J.L.P. while he is in Ochesky's possession because "[s]omebody is always there."

Ochesky testified that Pick assaulted her "[q]uite a few times," including once when he "beat me severely, and I was covered in bruises and couldn't walk quite right for quite a while." She said he "broke a plunger over [M.L.P.]'s head and threw steel-toed boots at [J.L.P.] and would continuously slap him very hard in the back of the head." She conceded that the last time this happened was before the divorce. She admitted moving three times during the case, but she said that the moves were due to Pick "harassing" her and "caus[ing] a bunch of problems." Ochesky testified that she currently lives with her parents in the "fifth wheel" trailer on their property, which she admitted needs repairs. She said

J.L.P. has his own room in the trailer. Ochesky stated that J.L.P. "refus[ed] to attend visits" with Pick because the children "are always left with [Pick's] family." She denied telling Brown that she was planning to move to Colorado or any other state; she surmised that Brown assumed she wanted to move because the rest of her family wants to move.

Ochesky stated that J.L.P. missed some school due to a "reflux condition that he was born with," but she denied that any other children had unexcused absences. She testified that Pick refuses to communicate with her regarding the children's health; instead, she has had to communicate with Pick's mother and Burk. She said Pick has not allowed her to visit with M.L.P. since the temporary orders were entered.

## C.    Trial Court's Ruling

At the end of the hearing, the trial court ruled as follows: "Parents are joint managing conservators. Dad is primary for all three kids. Child support, payable by mom, based on her salary. Standard possession order over a hundred miles." The court specifically denied Pick's request to be named sole managing conservator of M.L.P., and the court admonished Pick that he may not restrict or monitor the children's phone calls with Ochesky.

Ochesky filed a request for findings of fact and conclusions of law on October 26, 2020, four days after the trial court orally announced its ruling. On November 17, 2020, she filed a "Notice of Past-Due Findings of Fact and Conclusions of Law."

On November 17, 2020, the trial court signed a judgment in accordance with its oral rulings at the October 22 hearing, finding in part that "that the material allegations in the petition to modify are true and that the requested modification is in the best interest of the children." The judgment specifically stated that Pick has "the exclusive right to

9

designate the primary residence of the children without regard to geographic location."

Transfers of possession were ordered to take place at the residence of the party whose period of possession was beginning. The judgment generally provides that Ochesky is entitled to possession of the children on alternate weekends, and that she is obligated to pay Pick $401.57 per month in child support.

Ochesky timely filed a motion for new trial, which was denied by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. DISCUSSION

### A. Failure to File Findings and Conclusions

Ochesky alleges in her brief that the trial court committed reversible error by failing to enter findings of fact and conclusions of law pursuant to her request.[7]

"In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. Such a request "shall be filed within twenty days after judgment is signed with the clerk of the court." *Id.* "The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed." TEX. R. CIV. P. 297. Because the duty to file findings and conclusions is mandatory, a trial court's failure to do so upon proper request is "presumed harmful" unless "the record before [the] appellate court affirmatively shows that the complaining party has suffered no injury." *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989); *see Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per

---

[7] The failure to file findings and conclusions is not one of the issues enumerated in Ochesky's brief. Nevertheless, the brief includes argument and case citations pertaining to the issue. Accordingly, we address it. *See* TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *see also Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex. 2008) (holding that appellants were "entitled" to appellate review of an issue that was argued in the body of appellants' brief but was not included in appellants' list of "Issues Presented").

curiam). Injury may be present when "the circumstances of the particular case would require an appellant to guess at the reasons for the trial court's decision." *Gen. Elec. Cap. Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Pick argues that Ochesky "waived her complaint" regarding the failure to file findings and conclusions because she did not timely file a notice of past-due findings and conclusions. We agree. If a request for findings and conclusions is filed before the judgment is signed, it is "deemed to have been filed on the date of but subsequent to the time of signing of the judgment." TEX. R. CIV. P. 306c. If the court fails to timely file findings and conclusions as requested by a party, that party "shall, within thirty days after filing the original request, file with the clerk and serve on all other parties . . . a 'Notice of Past Due Findings of Fact and Conclusions of Law.'" TEX. R. CIV. P. 297. "Upon filing this notice, the time for the court to file findings of fact and conclusions of law is extended to forty days from the date the original request was filed." *Id.*

Here, Ochesky filed her request for findings and conclusions on October 26, 2020, but the judgment was not signed until November 17, 2020. Accordingly, the request was premature and is deemed to have been filed on November 17, 2020. *See* TEX. R. CIV. P. 306c. Ochesky's "Notice of Past-Due Findings of Fact and Conclusions of Law" was filed on November 17, 2020, the same day as the judgment itself.

In *Estate of Gorski v. Welch*, the San Antonio Court of Appeals considered a similar scenario. 993 S.W.2d 298, 301 (Tex. App.—San Antonio 1999, pet. denied). There, the appellant filed its request for findings and conclusions in September 1997, and it filed its notice of past due findings and conclusions in October 1997, but the trial court did not

11

sign the judgment until February 1998. *Id.* The court noted that "[a]lthough rule 306c applies to requests for findings of fact and conclusions of law, it does not apply to a notice of past due findings of fact and conclusions of law." *Id.* (citing *Echols v. Echols*, 900 S.W.2d 160, 161 (Tex. App.—Beaumont 1995, writ denied)). Appellant's notice of past due findings "was factually incorrect both when it was filed and when the judgment was signed, as the findings would not be late until twenty days after the date the judgment was signed." *Id.* The court held that "[s]uch a factually incorrect, premature reminder does not serve the purpose for the notice"; therefore, the appellant waived its complaint regarding the failure to file findings and conclusions. *Id.* at 301–02.

Like the notice filed by the appellant in *Gorski*, Ochesky's "Notice of Past-Due Findings of Fact and Conclusions of Law" was factually incorrect because the findings and conclusions were not past due at that time. Rather, as Ochesky's initial request is deemed to have been filed on November 17, 2020, the findings and conclusions were due by December 7, 2020. *See* TEX. R. CIV. P. 297, 306c. And, Ochesky's premature notice of past due findings and conclusions is not deemed to have been filed at some later date. *See Gorski*, 993 S.W.2d at 301 (citing *Echols*, 900 S.W.2d at 161); *see also Williams v. City of Richardson*, No. 05-20-00085-CV, 2021 WL 3891593, at *6 (Tex. App.—Dallas Aug. 31, 2021, no pet.) (mem. op.) (observing that "[i]f a notice of past due findings were allowed to be prematurely filed, it would defeat the purpose of reminding the trial court that it has been requested to file findings and has not done so by the time prescribed by the rules of procedure"); *Burley v. Burley*, 02-16-00119-CV, 2017 WL 4542854, at *2 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.) ("Unlike a premature request for findings of fact and conclusions of law, Rule 306c does not provide

for deeming as timely filed a premature notice of past due findings."); *Joseph v. Joseph*, No. 01-11-01096-CV, 2012 WL 1564318, at *2 (Tex. App.—Houston [1st Dist.] May 3, 2012, no pet.) (mem. op.) (same).

Because Ochesky failed to timely file a notice of past due findings and conclusions, she waived her complaint regarding the trial court's failure to file such findings and conclusions. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (noting that a party waives its right to challenge the lack of findings and conclusions if it fails to timely file a notice of past due findings as required by Rule 297). We overrule this unenumerated issue.

## B.     Custody Evaluation

By her first issue, Ochesky argues that the trial court improperly considered Brown's testimony and report for various reasons. We review a trial court's evidentiary rulings for abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

A trial court in a suit affecting the parent-child relationship may, after notice and hearing or by agreement of the parties, order the preparation of a child custody evaluation. TEX. FAM. CODE ANN. § 107.103.[8] The appointed evaluator must prepare a report containing findings, opinions, and recommendations on the pertinent issues. *Id.*

---

[8] The parties did not agree that a custody evaluator should be appointed, and the record does not reflect that a hearing was held before the trial court made the appointment. *See* TEX. FAM. CODE ANN. § 107.103. Nevertheless, Ochesky does not argue on appeal that the initial appointment of an evaluator was erroneous for this or any other reason. Accordingly, we do not address that issue. *See* TEX. R. APP. P. 47.1.

13

§ 107.113(a).[9] The statute provides that the evaluator "shall follow evidence-based practice methods and make use of current best evidence in making assessments and recommendations." *Id.* § 107.108(c). And "[t]o the extent possible, a child custody evaluator shall verify each statement of fact pertinent to a child custody evaluation and

---

[9] Generally, in order to opine on conservatorship, an evaluator must ensure that the following "basic elements" are "completed" as part of the evaluation:

(1) a personal interview of each party to the suit seeking conservatorship of, possession of, or access to the child;

(2) interviews, conducted in a developmentally appropriate manner, of each child who is the subject of the suit who is at least four years of age during a period of possession of each party to the suit but outside the presence of the party;

(3) observation of each child who is the subject of the suit, regardless of the age of the child, in the presence of each party to the suit, including, as appropriate, during supervised visitation, unless contact between a party and a child is prohibited by court order or the person conducting the evaluation has good cause for not conducting the observation and states the good cause in writing provided to the parties to the suit before the completion of the evaluation;

(4) an observation and, if the child is at least four years of age, an interview of any child who is not a subject of the suit who lives on a full-time basis in a residence that is the subject of the evaluation, including with other children or parties who are subjects of the evaluation, where appropriate;

(5) the obtaining of information from relevant collateral sources, including the review of:

(A) relevant school records;

(B) relevant physical and mental health records of each party to the suit and each child who is the subject of the suit;

(C) relevant records of the [Department of Family and Protective Services];

(D) criminal history information relating to each child who is the subject of the suit, each party to the suit, and each person who lives with a party to the suit; and

(E) notwithstanding other law, records or information from any other collateral source that may have relevant information;

(6) for each individual residing in a residence subject to the child custody evaluation, consideration of any criminal history information and any contact with the department or a law enforcement agency regarding abuse or neglect; and

(7) assessment of the relationship between each child who is the subject of the suit and each party seeking possession of or access to the child.

TEX. FAM. CODE ANN. § 107.109(c). If any element is not completed, the evaluator must say so in the report, explain the reasons why the element was not completed, and explain the "likely effect of the missing element on the confidence the child custody evaluator has in the evaluator's expert opinion." *Id.* § 107.109(b).

14

shall note the sources of verification and information in the child custody evaluation report prepared under [§] 107.113." *Id.* § 107.108(e).

Ochesky argues that Brown "failed to 'verify each statement' asserted as fact in her report, failed to verify the sources of such statements, and stated limited bas[e]s for her recommendations." *See id.* She also argues that the evaluation is "incomplete" because Brown spent only two hours interviewing Ochesky and allegedly did not follow up on all of Ochesky's concerns regarding Pick's parenting.[10] Ochesky notes that, according to the statute, "[d]isclosure to the court or the jury of the contents of a child custody evaluation report prepared under [§] 107.113 is subject to the rules of evidence." *Id.* § 107.114(a).

In response, Pick contends that Ochesky waived this issue because she failed to object in the trial court to Brown's written report or her oral testimony. We agree. Generally, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). Ochesky directs us to no point in the record, and we find none, in which she complained to the trial court about the consideration or admission of Brown's report or testimony, on any grounds. Moreover, Ochesky does not argue that preservation of error was unnecessary. *See* TEX. R. APP. P. 38.1(i). Accordingly, to the extent this issue argues that Brown's report and testimony were inadmissible or improperly considered under the family code or rules of evidence, it is overruled as waived.

---

[10] Ochesky testified that she gave Brown the names and contact information for "[s]ix to eight people" who could "confirm things that the children were telling to [her] that were concerning to [her]." She stated that Brown did not contact those people.

Ochesky additionally argues by her first issue that the trial court erred by considering Brown's written report because the report was never formally admitted as evidence at the October 22, 2020 hearing. Again, we disagree. We may presume that the trial court took judicial notice of its own files. *Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436, 439 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("The trial court is entitled to take judicial notice of its own records where the same subject matter between the same parties is involved. . . . As the reviewing court, we may presume that the trial court took such judicial notice of the record without any request being made and without any announcement that it has done so."); *see In re J.E.H.*, 384 S.W.3d 864, 869–70 (Tex. App.—San Antonio 2012, no pet.) ("[W]hen the record is silent, as here, the trial court may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so."); *see also In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that a trial court is "presumed to 'judicially know[] what has previously taken place in the case' tried before it" and that "the parties 'are not required to prove facts that a trial court judicially knows'" (quoting *Vahlsing, Inc. v. Mo. Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. App.—Corpus Christi 1978, no writ)). Here, Brown's written report was properly filed with the trial court clerk months before the hearing, and it was made part of the clerk's record on appeal. As noted, Ochesky did not object to the trial court's consideration of the report. We presume that the trial court took judicial notice of the written report, even though it did not formally declare that it was doing so at the hearing. *See Marble Slab Creamery, Inc.*, 823 S.W.2d at 439; *J.E.H.*, 384 S.W.3d at 869–70.

Ochesky's first issue is overruled.

16

**C.** **Exclusive Right to Designate Children's Primary Residence**

By her second issue, Ochesky argues that the trial court abused its discretion by granting Pick the exclusive right to designate the children's primary residence. *See* TEX. FAM. CODE ANN. § 153.134(b)(1) ("In rendering an order appointing joint managing conservators, the court shall . . . designate the conservator who has the exclusive right to determine the primary residence of the child."). She argues that the evidence was insufficient to show that this was in the best interests of the children.

**1.** **Standard of Review**

The trial court is afforded great discretion when determining issues relating to conservatorship such as the right to designate the primary residence of the children. *Gardner v. Gardner*, 229 S.W.3d 747, 753–54 (Tex. App.—San Antonio 2007, no pet.); *Dennis v. Smith*, 962 S.W.2d 67, 70 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). To determine whether the trial court abused its discretion, we review the "evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). In this context, challenges to the legal or factual sufficiency of the evidence are not separate grounds of error, but instead are relevant factors to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To determine whether the trial court abused its discretion because the evidence was legally or factually insufficient, "we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion." *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth

2010, no pet.).

We are mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App—Texarkana 2013, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Thus, we "defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions." *Id.*

Where, as here, no findings of fact and conclusions of law are filed, it is "implied that the trial court made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re R.T.K.*, 324 S.W.3d at 900.

### 2.    Applicable Law

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002; *see In re Marriage of Christensen*, 570 S.W.3d 933, 938 (Tex. App.—Texarkana 2019, no pet.).[11] In determining the best interests of the child,

---

[11] Generally, a court may modify an order affecting the parent-child relationship only if modification would be in the best interest of the child and:

the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:

(A)    the date of the rendition of the order; or

(B)    the date of the signing of a mediated or collaborative law settlement agreement on which the order is based . . . .

TEX. FAM. CODE ANN. § 156.101(a)(1). The trial court's November 17, 2020 order states that "the material

18

courts may consider the following factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "Proof of best interest is not limited to these factors, nor do all factors always apply in every case." *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The following additional factors may be relevant to the determination of a child's best interest when considering a parental relocation:

> (1) the reasons for and against the move, (2) the education, health, and leisure opportunities afforded by the move, (3) the accommodation of the child's special needs or talents, (4) the effect on extended family relationships, (5) the effect on visitation and communication with the noncustodial parent, (6) the noncustodial parent's ability to relocate, and (7) the child's age.

*Christensen*, 570 S.W.3d at 938 (citing *Lenz v. Lenz*, 79 S.W.3d 10, 15–16 (Tex. 2002)) *see In re D.L.N.*, 609 S.W.3d 237, 245 (Tex. App.—Texarkana 2020, no pet.) (same).

### 3. Analysis

As to the first *Holley* factor, Brown's report stated that M.L.P. and M.A.P.

---

allegations in the petition to modify are true" but does not explicitly state that there has been a material and substantial change in circumstances since the divorce. In any event, Ochesky does not argue on appeal that the trial court erred by implicitly finding a material and substantial change in circumstances. Accordingly, we do not address the issue. *See* TEX. R. APP. P. 47.1.

expressed their desire to attend school in Oklahoma. J.L.P. stated that Ochesky is nicer than Pick but that he is able to share his feelings with Pick, not with Ochesky.

As to the second and third *Holley* factors, both parties have been arrested for assaulting family members. Ochesky was arrested for assaulting M.L.P., although formal charges were not filed, and Brown stated that the physical disputes between the two may have been initiated by the child. Pick claimed that Ochesky "smacked him around" several times per year. For his part, Pick was arrested for assaulting his brother in 2016; he had a restraining order taken out against him after he threatened Ochesky's brother with a gun in 2017; and he was arrested for assaulting his second wife in 2019. Further, Pick's girlfriend's daughter allegedly "slapped" J.L.P. in the face. Ochesky testified that Pick assaulted her "[q]uite a few times," and that he hit and threw things at the children, but the trial court was entitled to discredit that testimony. *See In re P.M.G.*, 405 S.W.3d at 410.

Regarding the parenting abilities of the parties and acts or omissions which may indicate an improper relationship, Brown expressed that she was concerned about the extent to which the children were aware of the legal proceedings involving their parents. M.L.P. told Brown that Ochesky does not let the children go outside when they are in her possession. M.A.P. told Brown that Ochesky "bribes" the children in order to make them want to stay with her. And, both M.L.P. and J.L.P. had excessive school absences during the 2019–2020 school year, though it is unclear which parent had possession of the children during the times they missed school. Both parents accused the other parent of interfering with their ability to communicate with the children when not in their possession.

As to the sixth and seventh *Holley* factors, concerning plans for the children and

20

stability of the proposed placement, Brown testified that the trailer in which Ochesky resided "was not livable at the time" she visited, though the children were properly supervised and were safe. Brown was also concerned that Ochesky had lived in three different places during the case and planned to move to Colorado; Ochesky denied an intent to move, but the trial court was entitled to disbelieve her denial. *See id.* On the other hand, Pick's residence is "clean" and large enough to accommodate the children. Though Burk's mother runs a marijuana business, the evidence established that the business is legitimate under Oklahoma law and that Pick and Burk have taken steps to ensure that the children are not exposed to its operations. Neither parent had full-time employment at the time of the final hearing.

Finally, there was scant evidence implicating the factors relevant to parental relocation. *See Christensen*, 570 S.W.3d at 938. Pick's reason for relocating appears to be so that he could live with Burk. The move was not related to his ability to earn a living; in fact, he quit his gainful employment as a truck driver so that he would be able to live with Burk in Oklahoma. Although there was no testimony regarding Ochesky's ability to travel to Oklahoma to pick up the children, it is reasonable to assume that the 438-mile distance between the parties' residences could present substantial obstacles to the timely and consistent transfer of possession for visitation periods.

Overall, though the evidence was not overwhelming, we conclude that the trial court was within its discretion in determining that it was in the children's best interest for Pick to have the exclusive right to designate their primary residence. In particular, although both parties have been accused of family violence, the evidence established that Pick's parental abilities are slightly superior to Ochesky's and that Pick's residence

21

is more stable and appropriate for the children. Because there was some evidence of a substantive and probative character to support the ruling, we may not disturb it. *In re R.T.K.*, 324 S.W.3d at 900. Alternatively stated, the trial court had sufficient information upon which to exercise its discretion, and it did not abuse that discretion. *See In re M.M.M.*, 307 S.W.3d at 849.

We overrule Ochesky's second issue.

### III.     CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
13th day of January, 2022.